NO. 13-1279
_____

UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT
_____

**KENNETH BULL, M.D.,**

    Petitioner,

v.

**DRUG ENFORCEMENT ADMINISTRATION,**

    Respondent.
_____

**RESPONDENT'S OPPOSITION TO
PETITIONER'S EMERGENCY MOTION FOR STAY**

    Respondent, through its undersigned attorney hereby respectfully opposes Kenneth Bull, M.D.'s (Petitioner) Emergency Motion. Petitioner seeks to stay the final agency order imposing a six-month suspension of his Drug Enforcement Administration (DEA) Certificate of Registration (registration), pending this Court's review of the agency decision. For the reasons below, this Court should deny Petitioner's motion.

**I.    JURISDICTION**

    Pursuant to her authority under 21 U.S.C. §§ 823(f), 824(a) (2006) and 28 C.F.R. §§ 0.100(b), 0.104 (2009), the DEA Administrator granted, with conditions, Petitioner's application for renewal of his registration as a practitioner authorized

to dispense controlled substances, but further ordered that his registration be suspended for a period of six months.[1] *Kenneth Harold Bull, M.D.; Decision and Order*, 78 Fed. Reg. 62,666 (October 22, 2013). Petitioner timely filed a petition for review challenging the Administrator's order in this Court on November 14, 2013, and served the same on the government in accordance with the requirements of 21 U.S.C. § 877. Accordingly, this Court has jurisdiction over this matter.

## II.   PROCEDURAL AND FACTUAL BACKGROUND

On December 14, 2010, the DEA issued an Order to Show Cause to Petitioner proposing to revoke his DEA registration authorizing him to dispense controlled substances in schedules II through V[2] as a practitioner and to deny any

---

[1] Petitioner's registration was due to expire on July 31, 2010, however, on June 4, 2010, he submitted a renewal application to the DEA. 78 Fed. Reg. at 62,669. Accordingly, his registration remained in effect pending the issuance of the Final Order. *Id.*

[2] The Controlled Substances Act (CSA) establishes five schedules of controlled substances according to a substance's relative abuse potential, currently accepted medical use in treatment in the United States and the severity of psychological or physical dependence associated with abuse. *See* 21 U.S.C. § 812 (current substance list by schedule printed annually at 21 C.F.R. § 1308.11 - .15. Substances in lower schedules have a higher relative abuse potential and, generally, are subject to stricter controls.

pending applications for renewal of his registration, pursuant to 21 U.S.C.

§ 823(f).³  78 Fed. Reg. at 62,666.

Petitioner requested a hearing on the allegations, and the Government moved to stay the proceeding and for summary disposition, based on the New Mexico Medical Board's (State Board) order suspending Petitioner's state medical license. *Id*.  A DEA Administrative Law Judge (ALJ) granted the Government's motion, recommended revocation of Petitioner's registration and forwarded the record to the DEA Administrator for final agency action. *Id*. at 62,666-67.

On May 9, 2011, the State Board issued an order authorizing Petitioner to practice medicine, but prohibiting him from practicing pain management or prescribing narcotics. *Id*. at 62,667.  Subsequent to this order, the Government's unopposed motion to remand the matter back to the ALJ was granted. *Id*. Additional prehearing procedures were conducted, and an administrative hearing was held before the ALJ in Tucson, Arizona on November 15, 2011. *Id*. at 62,668.

At this hearing, DEA presented witnesses and a variety of documents to support its position that Petitioner's continued registration would be inconsistent with the public interest. *Id*. at 62,667.  A New Mexico Board of Pharmacy Drug

---

³ According to 21 U.S.C. §§ 823(f) and 824(a), the Attorney General may suspend or revoke a DEA Registration to dispense controlled substances when, *inter alia*, the registrant's conduct may threaten the public health and safety such that its registration would be inconsistent with the public interest. § 823(f).

3

Inspector and a DEA Diversion Investigator both testified about their inspection of Petitioner's practice that confirmed Petitioner asked patients to return medications to him; accepted medications from patients, including controlled substances; failed to maintain logs for transactions involving these medications and for drug samples he received from pharmaceutical company representatives; and stated that he did not know the medications and samples were controlled substances. *Id*. at 62,669-70. The investigators seized the drugs that had been returned by Petitioner's patients, as well as the non-controlled drug samples that were past their expiration date. *Id*. at 62,670. The Diversion Investigator took custody of hundreds of doses of substances in schedules II-V, including as follows: Fentanyl (5 patches); Adderall (38 capsules); amphetamine (25 tablets); d-amphetamine 5 mg (28 tablets); methadone 10mg (79 tablets); methylin 5mg (30 tablets); oxycodone 5mg (26 tablets); oxycodone/apap 5/325mg (20 tablets); oxycodone 30mg (34 tablets); oxycodone er 40mg (26 tablets); OxyContin 80mg (60 tablets); and oxycodone oral suspension 20mg/20ml (3 bottles). *Id*. The controlled substances taken into custody also included the following schedule III drugs: hydrocodone/apap 10/500mg (16 tablets) and Suboxone (267 tablets); the schedule IV drugs zolpidem (27 tablets), Provigil (modafinil) (4 tablets), and nine different benzodiazepines totaling more than 500 tablets; and finally the schedule V drugs diphenoxylate

4

hcl/atropine sulfate (290 tablets) and Lyrica (119 capsules). *Id*. Moreover, at least seven of the vials contained controlled substances that had been prescribed by other physicians. (patient SL, prescriber Dr. KS, drug oxazepam);(patient DC, prescriber Dr. JL, two prescriptions for liquid oxycodone); (patient SA, prescriber Dr. AW, drug methylphenidate hcl); (patient DC, prescriber Dr. JL, drug methadone hcl); (patient GN, prescriber Dr. ZH, drug oxycodone); and (patient KC, prescriber Dr. CS, drug triazolam). *Id*.

Petitioner testified on his own behalf and described how he had been practicing psychiatry for thirty-seven years. *Id.* at 62,669. Petitioner admitted that he did not keep a log of the returned medications, and did not know that he was required to do so under state or federal law. *Id*. at 62,670. Further, he testified that he did not know that various drugs were controlled substances, because the drug company representatives had never told him that they were controlled, or that logs had to be kept. *Id*. at 62,671.

Subsequent to the hearing, the ALJ issued his Findings and Recommended Decision and made findings with respect to each of the five public interest factors. *Id*. at 62,668. The ALJ found that the Government had established a *prima facie* case that Petitioner had committed acts inconsistent with the public interest. *Id*. With respect to factor one, the recommendation of the State Board, the ALJ

concluded that the State Board's order weighed in favor of finding that Petitioner's continued registration would be inconsistent with the public interest. *Id*. In addressing factors two and four, Petitioner's experience in dispensing controlled substances and compliance with applicable controlled substance laws, the ALJ found that Petitioner violated federal and state recordkeeping requirements, found that Petitioner lacked knowledge of his obligations under the law, and acted outside the usual course of professional practice, and in violation of 21 C.F.R. § 1306.04(a), in prescribing controlled substances to five patients reviewed by the State Board, thus these two factors weighed heavily in favor of a finding that Petitioner's continued registration would be inconsistent with the public interest. *Id*. Finally, with respect to factor five, such other conduct which may threaten public health and safety, the ALJ described Petitioner's acceptance of responsibility as "somewhat mixed," and concluded that Petitioner had failed to rebut the Government's case and demonstrate that he will not engage in future misconduct. *Id*. Accordingly, the ALJ recommended that Petitioner's registration be revoked and that any pending application be denied. *Id*.

Upon a full record review, the DEA Administrator found the evidence established that Petitioner unlawfully possessed controlled substances when he obtained possession of controlled substances from his patients that had been

prescribed by another physician. *Id*. at 62,673. In addition, the Administrator concurred with the ALJ that the recordkeeping violations had been egregious, and addressed the significance of recordkeeping as "one of the CSA's central features," that is "absolutely essential to protect against the diversion of controlled substances." *Id*. at 62,675. The Administrator held it was "unreasonable" for Petitioner to claim ignorance of the legal requirements applicable to his controlled substance activities. *Id*. However, the Administrator rejected several of the ALJ's findings of fact, including that Petitioner violated the prescription requirements of 21 C.F.R. § 1306.04(a), in prescribing controlled substances to five patients reviewed by the State Board, finding that Petitioner had not accepted responsibility for his misconduct, and finding that Petitioner had not testified credibly. *Id*. at 62,674-75.

In light of the record evidence, the Administrator granted Petitioner's application for renewal of his DEA registration subject to the condition that he be authorized to dispense only non-narcotic controlled substances (consistent with his state dispensing authority); that his DEA Identification Number as a Drug Addiction Treatment Act of 2000 (DATA) Waiver physician be revoked; and that his DEA registration be suspended for a period of six months, to begin on November 21, 2013. *Id.* at 62,676. The Administrator's decision was issued on

September 22, 2013, and published in the Federal Register on October 22, 2013. *Id*. at 62,676.

Petitioner did not file a stay motion with the DEA. On November 14, 2013, over three weeks after the decision was rendered, Petitioner filed the emergency motion with this Court stating that "[t]ime is of the essence." (Motion at p. 6).

## III. LEGAL ARGUMENT

### A. The applicable regulatory framework and the administrative case proceedings

The CSA establishes a closed system of distribution by establishing that controlled substances transactions meet certain standards and mandates record-keeping and reporting requirements. As part of this system, the CSA requires persons who prescribe or otherwise dispense controlled substances to obtain a DEA certificate of registration. 21 U.S.C. §§ 802(10), 822(a)(2). The DEA registers a practitioner, such as a physician (21 U.S.C. § 802(21)), "if the applicant is authorized to dispense ... controlled substances under the law of the State in which he practices." 21 U.S.C. § 823. The Administrator may deny a registration upon a determination that registration "would be inconsistent with the public interest." *Id*. Accordingly, the Administrator may suspend a registration upon a finding that a registrant "has committed such acts as would render his registration

under section 823 ... inconsistent with the public interest as determined under such section." 21 U.S.C. § 824(a)(4).

In this case, the Administrator considered the five statutory public interest factors set forth at section 823(f):

(1) The recommendation of the appropriate State licensing board or professional disciplinary authority;

(2) The applicant's experience in dispensing ... controlled substances;

(3) The applicant's conviction record under Federal or State laws relating to the manufacture, distribution, or dispensing of controlled substances;

(4) Compliance with applicable State, Federal, or local laws relating to controlled substances; and

(5) Such other conduct which may threaten the public health and safety.

78 Fed. Reg. at 62,671.

### B. <u>The standard for a stay</u>

In deciding stay motions, this Court considers four factors: (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies. *Nken v. Holder*, 556 U.S. 418,

9

428 (2009). *Also see Serono Laboratories, Inc. v. Shalala*, 158 F.3d 1313, 1317-18 (D.C. Cir. 1998). A stay is not a matter of right, "even if irreparable injury might otherwise result." *Nken* at 433. (*citation omitted*). Because Petitioner is the party seeking this relief, he bears the burden of meeting this standard. *Id. at* 433-34. "Once an applicant satisfies the first two factors," the court then "assess[es] the harm to the opposing party … and weigh[s] the public interest." *Id*. at 435.

### C. Exhaustion

Petitioner failed to comply with Local Rule 18 of the D.C. Circuit, which requires that, before seeking a stay from this Court, "a petitioner must ordinarily move first before the agency for a stay pending review of its decision or order." Federal Rule of Appellate Procedure 18(a)(2)(A)(ii), requires a movant seeking a stay from an agency decision to "show that moving first before the agency would be impracticable." Although Petitioner asserts that seeking a stay before the agency would be impracticable (Motion at p. 5), any impracticability is due to Petitioner's own delay in filing the stay over three weeks after the agency's final decision.

### D. Petitioner Fails to Satisfy the Standard for a Stay

Petitioner fails to satisfy the four-prong standard articulated above.

#### 1. Likelihood of Success on the Merits

Petitioner claims he has a likelihood of success because the Administrator's sanction, based upon Petitioner's recordkeeping violation, with nothing more, is an unprecedented and unexplained departure from agency precedent. (Motion at pp. 11-15). However, Petitioner's argument is fundamentally flawed because he misstates the basis for the sanction, as well as misapprehends the totality of the evidence introduced in the administrative proceedings and this Court's standard of review.

As previously described, the Administrator found that Petitioner committed recordkeeping violations **and** unlawfully possessed controlled substances..78 Fed. Reg. at 62,673. Although the Administrator gave "little weight" to Petitioner's unlawful possession, *id.* at 62,675, it is incorrect to state that Petitioner's only violations were recordkeeping ones.

Moreover, an agency's factual findings are reviewed under the substantial evidence standard. *See Dickinson v. Zurko*, 527 U.S. 150, 153-61 (1999). Substantial evidence means more than a mere scintilla but less than a preponderance; it means such relevant evidence as a reasonable mind might accept

as adequate to support a conclusion.  *See Trawick v. DEA*, 861 F.2d 72, 75 (4th Cir. 1988) *(quoting Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938) and *Consolo v. Federal Maritime Comm'n*, 383 U.S. 607, 620 (1966)).  The scope of review is "narrow" and a court should not "substitute its judgment for that of the agency."  *MD Pharmaceutical, Inc. v. DEA, 133 F.3d 8, 16 (D.C. Cir. Inc. v. DEA, 133 F.3d 8, 16 (D.C. Cir. 1998)(quoting Motor Veh. Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)); *see also Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951) (agency decision must be upheld even if court would have reached different conclusion under *de novo* review).

Accordingly, "the question for the reviewing court remains the same whether the agency agrees or disagrees with the ALJ – is the agency's decision supported by substantial evidence."  *Id*.; see also *Reckitt & Colman, Ltd. v. DEA*, 788 F.2d 22, 27 (D.C. Cir. 1986) (Deputy Administrator entitled to credit or discredit expert witnesses).

Moreover, Petitioner fails to address DEA's independent finding that granting his application for registration is inconsistent with the public interest, pursuant to 21 U.S.C. § 823(f).  Undeniably, the record establishes that Petitioner violated the CSA by unlawfully possessing controlled substances and by failing to protect against the diversion of controlled substances by maintaining distribution

and dispensation records. Although the Administrator noted that agency precedent held that recordkeeping violations alone can support the revocation of a registration, she concluded that Petitioner's recordkeeping violations do not warrant revocation. 78 Fed. Reg. at 62, 676. Nonetheless, the Administrator was troubled by the egregious nature of Petitioner's misconduct, the serious threat that diverting controlled substances poses to public health and safety, his lack of familiarity with identifying and handling controlled substances, despite having practiced as a physician for thirty-seven years, and concluded that a six month suspension was essential to protect the public interest under 21 U.S.C. § 823(f). *Id* at 62,676.

Where, as here, an agency has been entrusted with the task of fitting the remedy for a violation of a statute to the policy of the statute, this Court may not set aside the agency's choice of remedy unless it is "unwarranted in law or without justification in fact." *Butz v. Glover Livestock Commissions Co., Inc*., 411 U.S. 182, 185-86, 188 (1973). Suspension of a registration is one of the legally authorized remedies available to the Administrator if the registration of the person or entity would be "inconsistent with the public interest." *See* 21 U.S.C. § 824(a)(4); §823(f). So long as the Administrator's public interest determination is upheld, her decision as to remedy is sustainable on appeal.

The Administrator's choice of remedy in the instant case is consistent with existing case law. DEA "rationally may conclude that past performance is the best predictor of future performance," and it is not required to permit continued violations of the CSA. *Alra Laboratories, Inc. v. DEA*, 54 F.3d 450, 452 (7th Cir. 1995).

Given the egregiousness of Petitioner's violations of the CSA and his professed ignorance of his obligations, it was not arbitrary and capricious for the Administrator to conclude that Petitioner's continued registration without imposition of any sanction would be inconsistent with the public interest.

### 2.  **Irreparable Injury/Harm to Others**

A reviewing court considers three factors to evaluate the scope of harm in granting or denying a stay: (1) the substantiality of the injury alleged (*e.g.*, the harm must be "both certain and great, rather than speculative or theoretical"); (2) the likelihood that the harm will actually occur; and (3) the sufficiency of the proof provided. *Cuomo v. United States Nuclear Regulatory Commission*, 772 F.2d 972, 974 (D.C.Cir.1985). Economic loss, *per se*, does not constitute irreparable harm. *Wisconsin Gas Co. v. F.E.R.C.,* 758 F.2d 669, 674 (D.C. Cir.1985).

Petitioner's bald assertion that the temporary suspension of his DEA registration would cause him irreparable harm is merely speculative and without

record support.  The DEA's decision does not deprive Petitioner of the ability to continue to work as a physician.  Petitioner has not established the likelihood of irreparable harm to himself or others if the stay is denied.

### 3. <u>Harm to the Opposing Party and Public Interest</u>

Petitioner has not demonstrated either likelihood of success on the merits, or that irreparable harm would occur.  The final two factors, which "merge when the Government is the opposing party," also weigh against a stay.  *Nken*, 556 U.S. at 435.  Given the evidence adduced at Petitioner's administrative hearing and summarized briefly above, it is not in the public interest to grant a stay.  The Administrator correctly concluded that Petitioner has engaged in a disturbing pattern of illegally possessing controlled substances, improperly handling controlled substances and placing the public at risk by failing to comply with federal laws and regulations.  Accordingly, the Administrator concluded that suspension would be consistent with public interest.  Given Petitioner's actions, the public interest mandates that his stay request be denied.[4]

---

[4] Petitioner asserts that the irreparable harm to himself and the public are the same because, as "an aggrieved person effected [*sic*.] by an Administrator's decision, [he] necessarily represents the public interest," and a stay should be granted.  (Motion at p. 15-16).  This type of harm is inherent in all cases involving the suspension or revocation of a DEA registration and cannot logically be sufficient, standing on its own, to satisfy the criteria to support a stay of the agency order.

## **CONCLUSION**

For the foregoing reasons, Petitioner fails to satisfy the standards for granting a stay pending his petition for review. As a result, his Emergency Motion for Stay pending review in this matter should be denied.

        /s/ Anita J. Gay
        Anita J. Gay,
        Trial Attorney
        U.S. Department of Justice
        Criminal Division
        Narcotic and Dangerous Drug Section
        145 N Street, N.E., Suite 2E-300
        Washington, DC 20002
        Telephone: (202) 353-7629
        Facsimile: (202) 514-6112
        E-mail: anita.gay2@usdoj.gov

Dated: November 18, 2013

# CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing, Respondent's Opposition to Petitioner's Emergency Motion for Stay, with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit by using the appellate CM/ECF system on November 18, 2013. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

    /s/ Anita J. Gay
Anita J. Gay
Trial Attorney
U.S. Department of Justice
Criminal Division
Narcotic and Dangerous Drug Section
145 N Street, N.E., Suite 2E-300
Washington, DC 20002
Phone: (202) 353-7629
Fax:    (202) 514-6112
anita.gay2@usdoj.gov

Dated: November 18, 2013